1  SARA A. MOORE (SBN: 294255)
   smoore@grsm.com
2  GORDON REES SCULLY MANSUKHANI, LLP
   315 Pacific Avenue
3  San Francisco, CA 94111
   Telephone:  (415) 986-5900
4  Facsimile:  (415) 986-8054

5  Attorneys for Defendants
   GERARD VAN DE POL; G & H DAIRY, A GENERAL PARTNERSHIP (*erroneously sued*
6  *as* GERARD VAN DE POL AND HENRY VAN DE POL'S ESTATE D/B/A G & H DAIRY)

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  JUAN VILLALOVOS-GUTIERREZ,            CASE NO. 2:24-cv-02305-DJC-CKD
    SERGIO IVAN RODRIGUEZ-
12  RODRIGUEZ, JOSE DE JESUS             **DECLARATION OF RONALD A. GILLER**
    GONZALEZ-VILLALOBOS, BONIFACIO       **IN RESPONSE TO THE COURT'S**
13  CASTRO-MORALES and REYES             **FEBRUARY 26, 2026 ORDER TO**
    MORALES-DELGADILLO, individually     **SHOW CAUSE**
14  and on behalf of all others similarly situated,

15                          Plaintiff,

16        vs.

17  GERARD VAN DE POL; GERARD VAN
    DE POL AND HENRY VAN DE POL's
18  ESTATE d/b/a G & H DAIRY; G & H
    DAIRY, A GENERAL PARTNERSHIP,
19                                        Complaint filed: August 23, 2024
                            Defendants.   Trial date: February 1, 2027
20

21

22

23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

I, Ronald A. Giller, declare as follows:

1.    I am an attorney at law and am a Partner in the law firm of Gordon Rees Scully Mansukhani, LLP, attorneys for the defendants GERARD VAN DE POL; G & H DAIRY, A GENERAL PARTNERSHIP (*erroneously sued as* GERARD VAN DE POL AND HENRY VAN DE POL's ESTATE d/b/a G & H DAIRY).  I have personal knowledge of the matters contained in this declaration and if called to testify to them could and would do so competently.

2.    I am the Chief Legal Officer of Gordon Rees Scully Mansukhani LLP ("Gordon Rees" or "the Firm").  Gordon Rees currently employs over 1,900 attorneys located in 85 offices in all fifty states. I practice primarily out of Gordon Rees' Livingston, New Jersey office.

3.    Recognizing the significant risks posed by new, developing technology, in June of 2023, Gordon Rees adopted a policy regarding the use of artificial intelligence ("the AI Policy").  On July 30, 2025, Gordon Rees updated its AI Policy.  A true and correct copy of the Firm's Updated AI Policy is attached at **Exhibit 1.**

4.    A firm-wide email was sent to all employees on July 30, 2025, notifying them that the AI Policy had been updated and attaching a copy of the updated AI Policy (Exhibit 1).  The email directed employees to review and acknowledge the updated policy.

5.    On November 21, 2025, Gordon Rees sent an email to every attorney in the Firm attaching the Firm's Updated AI Policy and the Firm's Cite Checking Policy.  Every attorney was provided a link through which to acknowledge receipt of these documents, and I hereby certify that all lawyers employed by the firm as of November 21, 2025, the day the documents were distributed, has now acknowledged receipt.  A true and correct copy of this communication is attached hereto at **Exhibit 2.**  A true and correct copy of the Firm's Cite Checking Policy is attached at **Exhibit 3.**

6.    It is the policy of Gordon Rees to provide copies of the Firm's Updated AI Policy and the Firm's Cite Checking Policy to all new hires, including its contract attorneys.  These policies are also accessible via Gordon Rees' internal intranet and in its handbook.

**Gordon Rees Scully Mansukhani, LLP**
**315 Pacific Avenue**
**San Francisco, CA 94111**

-2-

DECLARATION OF RONALD A. GILLER IN RESPONSE TO THE COURT'S FEBRUARY 26, 2026 ORDER TO SHOW CAUSE
Case No.: 2:24-cv-02305-DJC-CKD

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

7.    On February 21, 2026, the Firm again recirculated the Firm's Updated AI Policy and the Firm's Cite Checking Policy along with a mandatory compliance reminder.  A true and correct copy of this communication is attached hereto at **Exhibit 4.**

8.    Additionally, each of the firm's offices are run by a managing partner, who I have instructed to reinforce these policies in person to the attorneys in their offices.  I have confirmed that this message has been delivered.

9.    In my role as Chief Legal Officer, I also have access to Firm records, including employee records relating to distribution of pertinent policies and attorney receipt of the same.  In my review of Firm records, then-Senior Counsel Amie M. Scully, who was employed as a contract attorney through a reputable third party agency at the time, acknowledged receipt of these policies – once in July 2025, when initially distributed and once in November 2025 after the policies were re-circulated.

10.    After reading the relevant filings in this matter, I first became concerned regarding the accuracy of the citations provided in the Joint Statement (ECF #28-1).  I spoke with Partner Sara A. Moore and communicated with Ms. Scully about their origin.  Ms. Scully denied using artificial intelligence in the drafting but shared that she had conducted the necessary research in the past and that the cases she cited were not independently verified or cite-checked.  Ms. Moore then shared with me that she independently completed her own review of the filings Ms. Scully had helped her prepare, including Defendants' Opposition to Plaintiff's Motion for an Order to Show Cause Why Defendant G & H Dairy Should Not Be Held in Contempt for Violation of Court's Order Compelling Discovery Responses (ECF #36), and that she had identified five cases cited which did not have a corresponding citation in Westlaw.

11.    As of the time of this filing, Ms. Scully has resigned from Gordon Rees and is no longer working in any capacity for the Firm.  For each of the cases which Ms. Scully was working on, Gordon Rees conducted an internal investigation into all filings containing legal citations by Ms. Scully for the last six (6) months.  Each of the handling partners then cite

DECLARATION OF RONALD A. GILLER IN RESPONSE TO THE COURT'S FEBRUARY 26, 2026
ORDER TO SHOW CAUSE
Case No.: 2:24-cv-02305-DJC-CKD

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

checked those filings in Westlaw to determine whether any additional documents suffered from any similar defects.

12.    Both before and after this Court's February 24, 2026 issuance of the Order to Show Cause, the Firm has taken reasonable steps to address the inherent risk associated with the use of developing technologies to ensure proper cite checking.

13.    Gordon Rees is prepared to accept any sanction the Court ultimately deems is appropriate in this situation.  Gordon Rees accepts ultimate responsibility for the actions of Ms. Scully in this case, actions which it recognizes have consequences.  Gordon Rees apologizes to the Court, the parties, and their counsel for these events and confirms its commitment to taking steps to ensure they do not happen again.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____March 2, 2026_____ at _____Livingston, New Jersey_____.

                                         city/state

DocuSigned by:

*Ronald A. Giller*

RONALD A. GILLER

-4-

DECLARATION OF RONALD A. GILLER IN RESPONSE TO THE COURT'S FEBRUARY 26, 2026
ORDER TO SHOW CAUSE
Case No.: 2:24-cv-02305-DJC-CKD

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

# EXHIBIT  1

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C



# Artificial Intelligence (AI) Policy

## Contents

Purpose ........................................................................................................................................... 1

Scope & Audience ........................................................................................................................... 1

Policy .............................................................................................................................................. 1

Exceptions ...................................................................................................................................... 3

Enforcement ................................................................................................................................... 3

Contact ........................................................................................................................................... 3

See Also .......................................................................................................................................... 3

Revision History ............................................................................................................................. 3

## Purpose

The goal of GRSM's AI policy is to at once leverage the immense potential benefits afforded by artificial intelligence for the benefit of our clients and the firm, while at the same time ensuring that adequate protections exist against the misuse of this technology or any resultant harm therefrom. In so doing, the following requirements are to be followed by all employees of the firm without exception.

## Scope & Audience

All GRSM attorneys and staff.

## Policy

1. The use of any technology or software programs utilizing AI in the workplace or in connection with the performance of any work performed on behalf of the firm must be pre-approved, using the firm's IT Technology approval process, by the firm's Information Technology Department designated approvers and no unauthorized technologies or programs utilizing AI shall be otherwise permitted in this context. This includes cloud-based AI-enabled technologies. A non-inclusive list of approved and disallowed AI technologies is found on the firm's intranet and at this link (click here). Please note that this list is subject to change and should be reviewed on a regular basis as applicable.

2. Regardless of its use or application, AI may never be used as a substitute for individual critical thinking or the production of any finalized substantive work product. Although it may be used as tool of enhancement or to aid in the development of initial drafts, no finalized versions of any such materials shall be utilized or released outside the firm absent the prior verification of the accuracy of same by the user or by another individual acting on his/her behalf, and the

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

preparation of same shall be made in accordance with all of the terms and conditions contained in this policy.

3. In utilizing artificial intelligence, the user must be mindful of avoiding any bias, discrimination or other prejudice that may be embedded or inherent in the program and is prohibited from engaging in any unlawful or unethical activity in connection with same.

4. The utmost care must be taken to protect the confidentiality, proprietary nature and privacy of the firm's clients and their information and no actions should be taken in connection with the utilization of AI which might tend to result in the possible release or dissemination of any confidential client or other protected information outside of the firm. This includes not uploading client content or sensitive case strategy documents to any AI technologies not approved by the firm and designated for data exchange specifically for processing, retaining and ensuring data protection and privacy.

5. All employees should practice suitable diligence and security practices in protecting the firm and its clients from any possible exposures, such as impersonation and fraud relating to deep-faking, phishing, social engineering, spamming, or similar types of cyber threats that may be generated or enhanced by the use of AI.

6. At no time may any employee charge a client for time not actually expended in the performance of a service on the client's behalf..

7. When using any material or information generated by AI, the utmost care must be taken to ensure that no unlawful infringement or appropriation of any intellectual property or proprietary/confidential belonging to others occur.

8. No employee may utilize AI to wrongfully impersonate or appropriate the likeness of any other person or to otherwise engage in any unlawful or unethical activity.

9. All applicable laws and regulations pertinent to the use of AI (including any rules of professional conduct, local court rules, client guidelines or professional responsibility) and any applicable reporting requirements provided by firm clients are to be adhered to in connection with the use of such technology.

10. Agreements that involve the integration, deployment, or utilization of AI within the firm must explicitly include provisions that ensure robust data and privacy protections. Agreements should outline the specific types of data collected, used, or accessed by AI systems, and must comply with all applicable data protection laws and internal privacy standards. Furthermore, vendors or partners must guarantee that any AI tools deployed adhere to ethical data handling practices, including safeguards against unauthorized access, retention beyond required periods, allowed/disallowed AI model training and sharing without express consent. The language should provide protection to ensure sustained compliance and accountability.

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

# Exceptions

Exceptions to this policy must be documented, reviewed, and approved by the Director of Information Security & Data Governance, the Chief Information Officer (CIO), and the Chief Risk Officer (CRO).

# Enforcement

Adherence to this policy is mandatory and any instances of non-compliance may result in a variety of negative employment consequences including but not limited to, and ranging from, disciplinary action through termination/disassociation.

# Contact

Direct inquiries about this policy to:

Chief Information Officer or Director of Information Security & Data Governance
Gordon Rees Scully Mansukhani
100 Pringle Ave, Suite 300
Walnut Creek, CA 94596
Email:  isdg@grsm.com

# See Also

- Acceptable Use Policy
- Vendor Risk Management and Auditing Policy
- Risk Management Policy

# Revision History

| Version | Description of Change | Approver | | Approval Date |
|---------|----------------------|----------|---|---------------|
| 2.0 | Clarification and addition to several items in the policy. | ï | Floyd Withrow, CIO<br>Aaron Barton, Chief Risk Officer | July 31, 2025 |
| 1.1 | Annual review. Updating item 10 to refer to standard exception and enforcement language, adding sections for Definitions and Roles & Responsibilities. Minor other edits. | ï | Doug Meier, Director, ISDG | June 24, 2025 |
| 1.0 | Annual review; no changes. | ï | Doug Meier, Director, ISDG | July 12, 2024 |
| 1.0 | Initial Version | ï | Floyd Withrow, CIO<br>Aaron Barton, Chief Risk Officer | June 28, 2023 |

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

EXHIBIT  2

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

| | |
|---|---|
| **From:** | Ronald Giller |
| **Sent:** | Friday, November 21, 2025 3:10 PM |
| **Subject:** | Attorneys:  Action Needed for Acknowledging Receipt of Court Document and Firm Policies |
| **Attachments:** | Doc. 1182 - Order on Order to Show Cause.pdf; GRSM Cite Checking Policy - version Sept2025.pdf; GRSM Artificial Intelligence _AI_ Policy version 25.01.pdf |
| | |
| **Importance:** | High |

All-

In a case in Alabama, a former GRSM attorney used AI in preparation of a brief.  Following a hearing, the Judge issued the attached Order, which everyone needs to read.  Pursuant to that Order, all GRSM attorneys are required to acknowledge receipt of the Order as well as of the firm's AI Policy and Cite Checking Policy, which are attached.   Please follow the instructions below.

- You may acknowledge receipt of the order and policies at this link.   Login with your GRSM login credentials, if prompted.

- The acknowledgement tracking system from GRSM Learn will send out a "course enrollment" email today.  This is a legitimate GRSM email.  Follow-up reminders for those that haven't completed the acknowledgement will follow each week.  You may use the link above or the course enrollment email to digitally acknowledge the receipt.

Thanks,
Ron Giller

---

**RONALD A. GILLER**
**Chief Legal Officer**



**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**

**E:** rgiller@grsm.com  |  grsm.com
290 W. Mount Pleasant Ave, Suite 3310, Livingston, NJ 07039
vCard

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

# EXHIBIT 3

# GRSM Cite Checking Policy

**Scope:**

All GRSM Attorneys and Paralegals

**Policy:**

Consistent with GRSM's policies regarding engagement handling and artificial intelligence,  it is **mandatory** that before any attorney (associate, counsel or partner) files a brief, the document needs to be checked in its entirety for (i) whether the cases are still good law; and (ii) whether the citations are accurate, in the correct form, and reflect what the cases actually say. This is not just the responsibility of the associate/counsel but also the partner who may be approving documents for filing to ensure that someone has performed these checks.  Also, if you are the person filing the brief, but did not perform the cite checks, please ask the attorney who drafted the filing to confirm this was done.

Note that the foregoing is easy to accomplish via our Westlaw subscription service which includes access to automated tools that can perform these checks (in addition to performing other helpful functions available in the "Tools" tab) and this only take a few minutes as follows:

1. When you sign into Westlaw, navigate to the "Tools" tab and click on the icon for "**Litigation Document Analyzer**."  Go to "Brief or memo analysis" and click "analyze your work." It will ask you to upload a document and then it will take some time to process. When it's finished, you'll see the following tabs:



The **"Warnings for cited authority"** tab shows any citation issues and then a list of your cases with the flags for negative authority.





The "**Language Analysis**" tab takes the quotes and identifies any differences from the cited cases. For example in this case, there is a typo that the tool pointed out:



2. The other item that needs to be checked is <u>citation format</u>. On the "Tools" screen, click on "Drafting Assistant Essential." It will ask you to upload your document.  After the document is uploaded, if you click on the home icon on the upper left, it will give you a menu of tasks.  *The Litigation Analyzer and CoCounsel Drafting may also have a format checking option:*



Click on <u>cite formatting</u>. You can then select the jurisdiction where you're filing and it will give you a list of your citations and suggested corrections. The drafting assistant tool can also very quickly generate a table of authorities if you click on the TOA Builder. Although you can also run WestCheck in this tool, it will not give as detailed a report as you will get from the Litigation Document Analyzer.

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

Again the foregoing policy is **mandatory** for all GRSM attorneys as this is an important area of increased scrutiny in the legal profession and the consequences of not following proper procedures can be extreme.

Thank you for all following these protocols and please direct any questions to the firm's Risk Management Department.

**Revisions:**

September 2025 - Policy Distribution by Email / All Attorneys and Paralegals

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

# EXHIBIT  4

Docusign Envelope ID: 0458BA64-7AF4-4273-BDFC-CA715CB4479C

| **From:** | Aaron Barton |
|---|---|
| **Sent:** | Saturday, February 21, 2026 10:44 AM |
| **Cc:** | Steven Bitter; Ronald Giller; Floyd Withrow |
| **Subject:** | Mandatory Compliances Reminder - AI and Cite-Checking Policies |
| **Attachments:** | GRSM Artificial Intelligence _AI_ Policy version 25.01.pdf; GRSM Cite Checking Policy - version Sept2025.pdf |

All Employees,

This is a formal reminder that the Firm's AI and Cite-Checking Policies are mandatory and apply to every employee without exception.

These policies have been distributed on multiple occasions and are not optional guidance. They establish clear requirements regarding the use of artificial intelligence and the verification of legal work product.

As stated in the AI Policy:

> "AI may never be used as a substitute for individual critical thinking or the production of any finalized substantive work product. Although it may be used as a tool of enhancement or to aid in the development of initial drafts, no finalized version of any such material shall be utilized or released outside of the Firm absent prior verification of its accuracy by the user or by another individual acting on his or her behalf."

No work product may be distributed externally unless it has been independently reviewed and verified for accuracy.

Additionally, any AI or other technology software programs must be pre-approved through the Firm's IT Technology approval process before use. A non-inclusive list of approved and prohibited AI technologies is available on the Firm's intranet (here).  Use of unapproved tools is strictly prohibited.

All Firm personnel are expected to immediately review the attached AI and Cite-Checking Policies in their entirety. Compliance is a professional obligation and a condition of continued access to Firm systems and resources.

Failure to adhere to these policies will result in corrective action, up to and including termination of employment.

If you have any questions regarding permissible use or the approval process, contact Risk or IT before proceeding.

Thanks,
Aaron